In re BOBBIE HILL et al., Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. STEPHANIE HILL, Respondent-Appellant.)

First District (4th Division)    No. 80-2748

Opinion filed November 25, 1981.

James J. Doherty, Public Defender, of Chicago (Brian K. Flaherty and Frances Sowa, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and James Koch, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Respondent, Stephanie Hill, appeals the trial court finding that her children were dependent and neglected. She raises two issues for review: (1) whether the findings that the children were neglected and dependent are contrary to the evidence where the State failed to offer any evidence that the children were deprived of proper care, and (2) whether the trial court arbitrarily refused to continue the dispositional hearing to obtain current information relative to the children's best interests.

We affirm.

Petitioners for adjudication of wardship were filed on September 7, 1978 alleging that Bobbie, Steven, and Tyrone Hill and Joni Crockett were dependent minors without proper care due to the mental disabilities of the mother in violation of the Juvenile Court Act (hereafter Act) (Ill. Rev. Stat. 1977, ch. 37, par. 702—5(1)(b)), and neglected in violation of the Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—4(1)(a)).

An adjudicatory hearing was held on May 8, 1979. Ann Keating, a registered nurse with the Chicago Health Department, testified that on the morning of August 23, 1978, at about 9:40, she visited a home in Chicago Heights. She saw three children who were clean and fully dressed, a man who was sleeping on a couch, and a baby who was sleeping in an armchair, covered only by a coat. Keating examined the baby several times. The baby seemed limp with poor muscle tone and extremely weak with dull eyes and a weak cry. Keating did not examine the other children.

Although the apartment was fully carpeted, clean and adequately lighted, Keating noticed that it was sparsely furnished. There were no beds in the bedroom. There was no gas or hot water. There was no

refrigerator in the kitchen, and Keating saw no food nor means of preparing food. However, Keating admitted that she did not look in the cabinets. The commode was full of excrement.

Keating knocked on the bedroom door and asked Stephanie Hill, the mother of the children, to come out. She did not do so until Keating threatened to call the police. When Stephanie came out, her gait was unsteady and she leaned against the wall for support. When Keating told Stephanie that the infant needed care, Stephanie ordered her out of the house. Keating returned one-half hour later with the police, but there was no response to her knock on the door.

Phyllis Putnam, a worker for the Department of Children and Family Services, testified that she had visited the Hill home on August 25, 1978, and had noticed that the yard was littered with glass, garbage, beer cans and liquor bottles. She also visited the children on August 31, 1978, at the home of their paternal grandmother. Putnam observed that Joni had small scars, an infected right arm and dry places on her scalp. There was nothing unusual about Bobbie. Steven had a small lump on his right forearm and an infected right leg.

Carrie Clark, the paternal grandmother, testified that she visited the children on August 27, 1978. Tyrone, the infant, was on a couch, alone. He looked weak and had vomited on himself. Three men walked into the house with a piece of paper and began removing the couch from the premises. Clark took the three older children with her. The next day she returned, found the baby at a neighbor's home, and took him to the hospital.

Eight-year-old Joni Crockett, daughter of respondent Hill, testified that she used to change the infant Tyrone's diapers and feed and bathe him. She continued to help her grandmother feed and care for Tyrone. Joni further testified that most of the time her mother was away and that she (Joni) was often scared. Joni asked her mother's friends for help in buying milk. On cross-examination, Joni stated that her mother did not leave the children alone often.

Respondent, Stephanie Hill, testified that she currently resided with her mother, brothers and sisters.

The adjudicatory hearing was continued until June 28, 1979, when John Whitman, a physician employed by clinical services, testified for the People. He had interviewed Stephanie as part of a diagnostic evaluation on February 15, 1979. In his opinion, Stephanie was an over-dependent, emotionally very immature person who was also quite depressed and who had difficulty caring for herself and her children in an appropriate manner. Stephanie felt lost and depressed, almost like a small child, unless some other adult was around on whom she could lean and ask for advice and from whom she could secure help. She needed someone who could

give her advice on how to handle herself and her children. Stephanie had no response, concern or recognition as to the inadequacy of a home without gas or water. Her only emotional response was that she was being victimized and she did not have any means of financial support. At the time of the interview, according to the witness, Stephanie was not on public aid and did not know how to apply for it. It was impossible for Whitman to discuss practical future plans with Stephanie.

Whitman characterized Stephanie as impractical and unrealistic. She thought that if only she could get her children back everything would be well. This was a purely emotional response supported by her feelings of separation and inadequacy. Stephanie thought that she and her children could live with her mother, which was contrary to Whitman's information.

In Dr. Whitman's opinion, Stephanie was unable to take responsibility for her children. The basis for his opinion was her purely emotional responses and her complete inability to make any practical plans or to consider situations realistically.

On cross-examination, Whitman admitted that Stephanie was not psychotic or totally detached from reality. She was not suffering from mental illness but from a severe emotional disability—a personality disorder. She was inherently incapable of dealing with stressful and demanding situations because of her immature personality. However, Whitman admitted that immaturity disappears as a person grows up. It was unclear to Whitman to what degree Stephanie's depression was due to the separation from her husband, but it was natural to be hurt and angry upon separation from spouse and children.

Bobbie Hill, Stephanie's husband, also testified at the June hearing. He had married Stephanie in 1973 and they had separated in June 1978. He acknowledged that he was the father of Steven, Bobbie and Tyrone and thought that he was the father of Joni. After separating from his wife, he visited her twice and gave her $50 twice. On his visits, he noticed that his children were clean but bruised. He never brought food or toys and he never offered to babysit.

Respondent testified that she was 22 years old; that there was no gas or water in her house on August 24, 1978; that she was facing eviction that day; and that she had been treating her daughter's scalp problem.

Margaret Allen, social worker for the Department of Children and Family Services, recommended permanent placement of the children with the paternal grandmother and that Richard S. Layman be appointed guardian. On cross-examination, Allen said that Stephanie was in counseling and that Stephanie and the children could manage and function if she had the supportive services of a competent adult. If Allen had more information regarding the family's living arrangement, she might recommend a supervision order. Attorneys for Mr. and Mrs. Hill and the

guardian ad litem moved for a continuance to obtain counseling reports on Stephanie and to allow her time to secure proper housing, but the judge denied the motion.

The judge made a finding of neglect pursuant to section 2—4(1)(a), dependency pursuant to section 2—5(1)(b), and that the mother was under a disability and there was inability and best interest pursuant to section 5—7(1)(a) of the Act. He appointed Richard S. Layman guardian of the children with the right to place with the paternal grandmother.

Respondent contends the trial court's findings that her children were neglected and dependent were contrary to the evidence where the State failed to offer any evidence that the children were deprived of proper care.

The Juvenile Court Act provides that a neglected child is one "who is neglected as to proper or necessary support, education as required by law, or as to medical or other remedial care recognized under State law or other care necessary for his well being * * *." (Ill. Rev. Stat. 1977, ch. 37, par. 702—4(1)(a).) A child is dependent when he is "without proper care because of the physical or mental disability of his parent * * *." Ill. Rev. Stat. 1977, ch. 37, par. 702—5(1)(b).

■■■ Neglect is the failure to exercise the care that circumstances justly demand and it embraces willful as well as unintentional disregard of parental duty. (In re Brooks (1978), 63 Ill. App. 3d 328, 337, 379 N.E.2d 872, 879.) The question of whether children are neglected within the meaning of section 2—4 of the Act is to be determined from the specific circumstances of each individual case. The State has the burden of proving neglect by a preponderance of the evidence and once a determination is made, the decision will not be overturned on review unless it is against the manifest weight of the evidence. (In re Gomez (1977), 53 Ill. App. 3d 353, 359, 368 N.E.2d 775, 779.) Custody questions are among the most difficult and sensitive presented to courts for resolution. Respectful weight must be given the consideration that the trial court had the opportunity of observing witnesses. People ex rel. Edwards v. Livingston (1969), 42 Ill. 2d 201, 210, 247 N.E.2d 417, 422.

We hold that the finding of neglect and dependency was proper. The court heard evidence that there was no food in the house or any way of preparing food. There was no refrigerator, no beds, no running water or gas. The commode was full of excrement. The infant was limp, weak and had poor muscle tone. When the paternal grandmother visited the home, the baby was weak and had vomited on himself. A social worker examined the children and found that Joni had an infected right arm and Steven had an infected right leg.

The court also heard evidence that respondent was suffering from a severe emotional disability which rendered her incapable of dealing with

stressful and demanding situations. She was unable to make practical plans or consider situations realistically. Respondent had no response, concern or recognition of the inadequacy of a home without gas or water. She did not have any means of financial support.

■■ In light of all the facts considered by the court, we hold that the finding of neglect and dependency was not against the manifest weight of the evidence.

■■ Respondent's second contention is that the trial court arbitrarily refused to continue the dispositional hearing to obtain current information relative to the children's best interests. Trial courts have broad discretion in granting or denying motions for continuances. Unless there is manifest abuse of discretion, or a palpable injustice apparent in the record on appeal, the judgment of the trial court will not be disturbed. *Economy Fire & Casualty Co. v. Warren* (1979), 71 Ill. App. 3d 625, 390 N.E.2d 361.

■■■ In the present case, the public defender requested a continuance of a month so that he could contact respondent's counselor. There was no showing in the record of a prior effort to contact the counselor which would indicate the importance of his presence at the hearing. A motion for continuance is insufficient where there is no showing that the absence of a witness would jeopardize the case. (*Economy Fire & Casualty* (1979), 71 Ill. App. 3d 625, 629.) We hold that the trial judge did not abuse his discretion by denying the motion for a continuance.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

ROMITI, P. J., and LINN, J., concur.